# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re

GREG THOMASON and
DIANA THOMASON

**Bankruptcy Case
No. 03-42400**

**Debtors.**

_____

R. SAM HOPKINS, TRUSTEE,

**Plaintiff,**

**vs.**

**Adversary No. 08-8032**

THOMASON FARMS, INC.;
NICHOLAS A. THOMASON
and SANDRA K. THOMASON,
husband and wife; BYRON
T. THOMASON and MARILYNN
THOMASON, husband and
wife; UNITED STATES OF
AMERICA (INTERNAL REVENUE
SERVICE); JAY A. KOHLER;
DOUBLE T FARMING AND
RANCHING, INC.; EVAN
WISE; FFIC GROWER CORP.;
TRI-RIVER CHEMICAL CO.,
INC. d.b.a UAP NORTHWEST;
and JOHN O. AVERY,

Defendants.

MEMORANDUM OF DECISION - 1

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Monte Gray, SERVICE, SPINNER & GRAY, Pocatello, Idaho, Attorney for R. Sam Hopkins, Trustee, Plaintiff.

Stephen J. Blaser, BLASER, SORENSEN & OLESON, Blackfoot, Idaho, Attorneys for FFIC Grower Corp.

Jay A. Kohler, Idaho Falls, Idaho, Pro Se Defendant.

John O. Avery, Idaho Falls, Idaho, Pro Se Defendant.

Nicholas Thomason and Sandra Thomason, and Byron T. Thomason and Marilynn Thomason, Rexburg, Idaho, Pro Se Defendants.

## I. Introduction

In a prior adversary proceeding, the Court determined that a certain parcel of real estate referred to as the Agren property is subject to fractional ownership:  Thomason Farms, Inc. ("TFI") owned an undivided two-thirds interest in the Agren property; and the remaining one-third interest became

MEMORANDUM OF DECISION - 2

property of the bankruptcy estate of Greg and Diana Thomason.[1]  The

Court ordered that the Agren property should be sold in the bankruptcy

case free and clear of TFI's co-ownership interest therein, as provided in

§ 363(h).[2]  TFI and several of the individual Thomasons[3] appealed that

decision to the Bankruptcy Appellate Panel of the Ninth Circuit, which

affirmed the Court's decision in all respects.  *See* Adv. Proc. No. 04-6134,

Docket No. 291.

Thereafter, on November 14, 2007, the Court granted the request of

the chapter 7 trustee R. Sam Hopkins ("Trustee") to sell the Agren property

for $990,000 cash, free and clear of all liens and interests therein.  Docket

No. 1, Ex. A.  The Court's sale order authorized the closing agent to pay all

---

[1]  A full discussion of the Court's findings and conclusions with respect to the Agren property is contained in its memorandum of decision and final judgment.  Adv. Proc. No. 04-6134, Docket Nos. 138, 204.

[2]  Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9036, in effect prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

[3]  All references to "the Thomasons" include Byron, Sandra, Nicholas, and Marilynn, unless otherwise indicated.

MEMORANDUM OF DECISION - 3

closing costs, real property taxes, and the realtor's commission from the
proceeds of the sale and to disburse the balance to Trustee to hold pending
further order of the Court. *Id.*

The Agren property was indeed sold, and the net proceeds were
disbursed to Trustee. On May 27, 2008, Trustee initiated this adversary
proceeding to determine how to distribute the proceeds from the sale of the
Agren property as among those parties claiming an interest or lien in the
property. Following a three day trial, the Court took the issues under
advisement for decision. Having now reviewed the evidence and
testimony in the record, the arguments of the parties, and the applicable
law, the Court disposes of the issues below.[4]

## II. Facts

Prior to the sale of the Agren property, Trustee obtained a standard
commitment for title insurance. Ex. 103. The title report for the
commitment included a number of exceptions for various encumbrances

---

[4] This Memorandum constitutes the Court's findings of fact and
conclusions of law. Rules 7052.

MEMORANDUM OF DECISION - 4

which had been previously recorded concerning the property.  Trustee

named each of the individuals and entities identified in the exceptions as

defendants in this adversary proceeding.  These exceptions and parties

include the following:

- A federal tax lien in the principal amount of $3,349.80 against taxpayer TFI, which was recorded on August 18, 1997;
- A lis pendens recorded by TFI on June 9, 2003 relating to Adversary Proceeding No. 03-6116 pending before the United States Bankruptcy Court for the District of Idaho;
- A judgment against TFI and in favor of Tri-River Chemical Co., Inc., d.b.a. UAP Northwest in the amount of $264,605.78 which was recorded on February 3, 2004;
- A lis pendens recorded by TFI on February 18, 2004 relating to Case No. CV-04-66 pending before the Idaho district court in Madison County;
- A mortgage dated April 16, 2004 granted by TFI to the Thomasons to secure an original indebtedness of unspecified amounts;
- A federal tax lien in the principal amount of $8,135.46 against taxpayer TFI which was recorded on September 22, 2005;
- A judgment lien against TFI and in favor of FFIC Grower Corp. ("FFIC") in the principal amount of $17,451,44[5] which was recorded on October 21, 2005;

---

[5] Counsel for FFIC explained that prior to entering the judgment, the state court reduced the total amount of the judgment by $500, as evidenced by the hand written notation on the judgment.  *See* Ex. 602.  The abstract of judgment that was recorded, however, did not contain a similar reduction.  *See* Ex. 603.

MEMORANDUM OF DECISION - 5

- A notice of claim of attorney's lien in the amount of $35,000 recorded by Jay Kohler ("Kohler") on February 7, 2006;
- A grazing permit which was granted by Double T Farming and Ranching, Inc., to Evan Wise which was recorded on August 7, 2006;
- A notice of claim of attorney's lien in the amount of $41,619.31 which was recorded by John Avery ("Avery") on July 9, 2007.

*See* Ex. 103.

When the sale of the Agren property closed, the closing agent paid all sale costs, real estate taxes, and the realtor's commission as authorized by the Court's prior order.  The balance of the sale proceeds,  amounting to $929,310.24, were paid over to Trustee.  In an order entered on August 1, 2008, the Court authorized Trustee to bifurcate the remaining sale proceeds.  *See* Bankr. Case No. 03-42400, Docket No. 239.  In this order, one-third of the proceeds were to be paid to Trustee for distribution in the bankruptcy estate of Greg and Diana Thomason.  Trustee was ordered to hold the remaining two-thirds of the proceeds in trust pending further order of the Court.  *Id*.

///

MEMORANDUM OF DECISION - 6

*///*

## III. Discussion and Disposition

### A.    Defaulted Parties

On August 29, 2008, Trustee applied for entry of Clerk's default

pursuant to Rule 7055 as against Defendants TFI, Evan Wise, Tri-River

Chemical Co., Inc., FFIC, and Double T Farming and Ranching, for failure

to file a responsive pleading.  The default was entered on September 2,

2008.  Docket No. 18.  Thereafter, the Court set aside the Clerk's default

with respect to FFIC, which filed a tardy answer.  *See* Docket Nos. 27, 28.

At the commencement of the trial, Trustee moved for the entry of a

default judgment against all parties that had failed to respond to the

complaint.  The Court reserved ruling on that motion.  Trustee also

requested that a default judgment be entered against Byron and Sandra

Thomason, who did not personally appear on the first day of trial.  The

Court denied that request.  At the conclusion of the trial, the Court

announced its intention to enter a enter default judgment against all parties

that did not appear, with the exception of Sandra Thomason who had

MEMORANDUM OF DECISION - 7

appeared in writing, although she was not personally present in the

courtroom.  Accordingly, Trustee is entitled to relief as requested in his

complaint as against Defendants TFI, Evan Wise, Tri-River Chemical Co.,

Inc., and Double T Farming and Ranching.  The Court's judgment shall

order that those parties receive no payments from the Agren property sale

proceeds.

### B.     Federal Tax Liens

In its pretrial order dated October 22, 2008, the Court directed all

parties to exchange exhibits and witness lists, and to file a pretrial

memorandum, at least seven days prior to trial.  Docket No. 29.  The IRS

did not file a pretrial brief, but it did file an exhibit list on March 20, 2009, to

which it attached a copy of a proposed exhibit.  This solitary exhibit was

marked as Ex. 900, and bears the title "Filed Tax Liens."  Docket No. 55.

The day before trial, the IRS and Trustee agreed in a document filed with

the Court that this exhibit could be admitted as evidence.  Docket No. 58.

That agreement contains only the signatures of counsel for the IRS and

Trustee.  The agreement was not approved by any of the other parties or

MEMORANDUM OF DECISION - 8

attorneys appearing in the proceeding, nor does it appear that they were participants in the agreement.

The IRS did not appear at the trial, and the Court proceeded with the presentation of evidence in its absence. At the close of Trustee's case in chief, and in accordance with its pretrial order regarding the presentation of evidence, the Court asked again if there was any appearance on behalf of the IRS. There was no response. The Court deemed the IRS's failure to appear as a waiver of its right to present evidence and testimony. *See* Minutes of Trial, Docket No. 61. The evidentiary presentation continued with the other parties who had appeared, and at the conclusion thereof, the evidentiary record was deemed closed. As a result, Ex. 900 was never offered nor admitted into the evidentiary record.

Even so, in each of their respective arguments, Trustee, Kohler, and Avery concede that both of the IRS's recorded liens are valid secured liens with first and second priority positions. The Thomasons generally contest the validity of the Agren property sale and many of the liens recorded as to that property, but have not specifically challenged the validity or priority of

MEMORANDUM OF DECISION - 9

the IRS's liens.  Taking a slightly different approach, FFIC argues that

because it did not appear, "the Court has entered default against [the IRS]"

and therefore it is not entitled to a priority position with respect to these

proceeds.  Docket No. 67.

FFIC is almost correct.  Although the Court announced its intention

to enter a default judgment against all parties that did not appear, it has not

yet done so.  However, that judgment will be entered in connection with

this decision.  And while most of the appearing parties are willing to

concede the validity of the IRS's liens and its position with respect to

priority, there was no evidence introduced in the record to support

payment of these tax liens.  The IRS was given sufficient opportunity to

appear and protect its interest, but it chose not to do so.  Filing a stipulation

with the Plaintiff on the day before trial in which seven of the parties that

appeared in this action have not joined is inadequate to constitute a proper

offer to admit the IRS exhibit into evidence.  After all, it is the Court's duty

to determine the admissibility of evidence, not the parties', and all of the

parties claiming an interest in these funds, not merely Plaintiff, should have

MEMORANDUM OF DECISION - 10

an opportunity to object to a documentary exhibit.  Based upon the record

before the Court, the IRS is not entitled to share in any distribution made

from the TFI two-thirds portion of the proceeds at this juncture.[6]

### C.    The Thomason Mortgage

The individual Thomasons claim to hold an unsatisfied mortgage on

the Agren property which allegedly secures debts due and owing to them

by their company, TFI.  This mortgage is evidenced by a document entitled

"Real Property Mortgage and Chattel Property Lien."  Ex. 102.  It was

signed by Nicholas and Byron Thomason on behalf of TFI as mortgagor,

and by each of the Thomasons as mortgagees on April 17, 2004.  *Id.*  It was

recorded in Madison County on April 19, 2004.  *Id.*

Trustee contends this mortgage is legally deficient and is therefore

---

[6] To address its failure to participate at trial to prove up its claim, upon
proper request, the Court may be willing to reconsider this ruling, and order that
the taxes allegedly secured by the recorded IRS liens be paid.   However, if it
seeks reconsideration and payment, the Court would recommend that IRS obtain
the consent of all parties claiming an interest in the sale proceeds appearing in
this action.  In the alternative, IRS can look to TFI's other assets for satisfaction of
its tax claims.

MEMORANDUM OF DECISION - 11

invalid.[7]  The Thomasons, of course, dispute this argument.  The Court

agrees with Trustee.

In Idaho, a mortgage is a form of contract, and can only be created by

a writing, executed with all of the formalities required to convey real

property.  Idaho Code § 45-902.  The general requirements for a conveyance

of real property are outlined in the Idaho Code, which  provides:

> A conveyance of an estate in real property may be
> made by an instrument in writing, subscribed by
> the party disposing of the same, or by his agent
> thereunto authorized by writing. The name of the
> grantee and his complete mailing address must
> appear on such instrument.

Idaho Code § 55-601.  *See also Chavez v. Barrus*, 192 P.3d 1036, 1044 (Idaho

2008) (endorsing this general rule).  Thus, for a mortgage to be valid, it

must be in writing, subscribed by the mortgagor, or by his agent, and

include the name of the mortgagee and his complete mailing address.

The document at issue in this case is signed by both Nicholas and

_____

[7] FFIC and Avery concur with Trustee and advance similar arguments
urging the invalidity of the purported mortgage.  Kohler has taken no position
with respect to this mortgage.

MEMORANDUM OF DECISION - 12

Byron Thomason as president and secretary of TFI, respectively.  As such, it

clearly satisfies the first requirement that the instrument be subscribed by

the mortgagor or his agent.  However, the latter requirement under the

statute is not satisfied.  Although each of the Thomasons also signed the

document, they did not include their complete mailing addresses on the

instrument, nor did they incorporate them by reference to some other

document.  As such, this mortgage instrument fails to comply with the

requirements under Idaho law and is therefore invalid.

In addition to this deficiency, to the extent the document is a contract

between TFI and the Thomasons, it lacks several essential terms.  The

amount of the debt is not identified, and with the exception of the notation

that the debt is "due and owing," there are no repayment terms.   Because a

mortgage is subject to the statute of frauds, gaps in essential terms cannot

be filled by parol evidence.  *Lawrence v. Jones*, 864 P.2d 194, 197 (Idaho Ct.

App. 1993).  A contract must be complete, definite and certain in all its

material terms, or contain provisions which are capable in themselves of

being reduced to certainty.  *Id.*, citing *Giacobbi Square v. PEK Corp.*, 670 P.2d

MEMORANDUM OF DECISION - 13

51, 53 (Idaho 1983).

Because the Court finds the Thomasons' mortgage to fatally imprecise and vague, it is invalid and does not entitle them to receive a distribution from the proceeds of the Agren property.[8]

### D.    FFIC's Judgment Lien

In 2005, FFIC filed a complaint against TFI in state court to collect an open account.  TFI failed to appear at a pretrial conference, and on October 11, 2005, the court entered a default judgment against TFI and in favor of FFIC in the amount of $16,951.44.  Ex. 602.  The judgment was to accrue interest at the statutory rate of 8.375% per annum.  An abstract of this judgment was recorded by FFIC's counsel in Madison County on October 21, 2005.  Ex. 603.

Pursuant to Idaho Code § 10-1110, upon recordation of an abstract, a judgment becomes a lien upon all real property owned by the judgment

---

[8]  The Court had previously held that, under state law, this mortgage also did not attach to the one-third interest in the Agren property owned by Greg and Diana Thomason, and now their bankruptcy estate.  *See* Memorandum of Decision at 66-67, Adv. Proc. No. 04-6134, Docket No. 138**.**

MEMORANDUM OF DECISION - 14

debtor, in this case TFI, in the county.  A lien recorded in this matter

continues in effect for five years from the date of the judgment.  Idaho Code

§ 10-1110.  At trial, none of the parties effectively challenged the validity of

FFIC's lien.  The Court concludes that FFIC holds a valid lien that attaches

to TFI's interest in the sale proceeds of the Agren property.  FFIC's lien is

prior in time to all other liens on the property, and the full amount due on

the judgment should be paid by Trustee from the sale proceeds.

### E.    Attorney's Charging Liens

The Thomasons challenge the liens of two attorneys who claim liens

on the Agren property sale proceeds.

The Thomasons retained Kohler and Avery to represent them and

TFI at different stages in this seemingly endless litigation in this

bankruptcy case.  However, both Kohler and Avery have long since

withdrawn as counsel of record.  They allege that their former clients failed

to pay them in full for their services; they now seek to recover the balance

due from the sale proceeds.  Each recorded an attorney's charging lien

which, they argue, attached to TFI's interest in the sale proceeds of the

MEMORANDUM OF DECISION - 15

Agren Property.

The statute upon which the attorneys rely is Idaho Code § 3-205,

which  in pertinent part provides:

> From the commencement of an action, or the
> service of an answer containing a counterclaim,
> the attorney who appears for a party has a lien
> upon his client's cause of action or counterclaim,
> which attaches to a verdict, report, decision or
> judgment in his client's favor and the proceeds
> thereof in whosoever hands they may come[.]

Idaho Code § 3-205.  This statute recognizes that a charging lien in favor of

an attorney may attach to the client's cause of action to secure the payment

of attorneys' fees incurred by the attorney in procuring benefits for his

client.  *In re Secaur*, 83 I.B.C.R. 175, 176 (Bankr. D. Idaho 1983); *Skelton v.*

*Spencer*, 625 P.2d 1072, 1078 (Idaho 1981).  Interpreting this statute, the

Idaho Supreme Court explained:

> The law is well settled that an attorney in
> asserting a charging lien is entitled to recover
> against sums which his efforts have brought forth.
> Variously phrased, the intent of the law on this
> point is to allow the attorney an interest in the
> fruits of his skill and labors.  The lien secures his
> right to compensation for obtaining the recovery

MEMORANDUM OF DECISION - 16

> or "fund" for his client.  Of course, where the
> attorney's efforts are sterile, there would be
> nothing against which the lien right could be
> asserted, but where he has produced a fund, he
> has an equitable interest therein recognized by the
> lien statute and relevant case law.

*Skelton*, 625 P.2d at 1078.  The court then set forth five distinct requirements

for the establishment of a valid charging lien:

> (1) [T]hat there is a fund in court or otherwise
> available for distribution on equitable principles,
> (2) that the services of the attorney operated
> substantially or primarily to secure the fund out of
> which he seeks to be paid, (3) that it was agreed
> that counsel look to the fund rather than the client
> for his compensation, (4) that the lien claimed is
> limited to costs, fees or other disbursements
> incurred in the litigation by which the fund was
> raised and (5) that there are equitable
> considerations which necessitate the recognition
> and application of the charging lien.

*Id.* at 1079 (internal citation omitted).

Two years after *Skelton* was decided, the Idaho Supreme Court

recognized that an attorney's lien could arise even in situations in which no

"fund" was created by the attorney's efforts.  *See Frazee v. Frazee*, 660 P.2d

928 (Idaho 1983).  However, in those cases, the Supreme Court recognized

MEMORANDUM OF DECISION - 17

that "'[t]he equitable source of the claimed charging lien necessitates that an attorney take affirmative steps in an adjudicative process to perfect and reduce his lien to a judgment or order of the court." *Id*. at 931. The court clarified that "[a] charging lien is only brought about by some affirmative act of the party asserting the lien in reducing it to a judgment or order of the court." *Id.*

This Court, relying upon the state court case law, has also previously discussed the limited circumstances under which an attorney's charging lien will be enforced:

> If the cause of action results in a judgment or settlement, *i.e.*, creation of a "fund," and if that fund was the agreed upon source of payment of the fees (such as in a contingency fee arrangement), then a court with access to that fund may recognize the lien as an equitable matter in distributing the fund to parties claiming interests therein. If the five elements of *Skelton* do not exist, and the attorney is claiming a lien on property other than a "fund" which he helped create and to which it was agreed he would look for compensation, he must undertake an *adjudicative process* to "perfect and reduce his lien to a judgment or order of the court." A failure to do so, according to the [Idaho] court, raises due

MEMORANDUM OF DECISION - 18

process implications.

*In re Secaur*, 83 I.B.C.R. 175, 177-78 (Bankr. D. Idaho 1983) (emphasis in

original; internal citation omitted).

Unfortunately, in their arguments in their briefs, Kohler and Avery

gloss over the requirements laid down in *Skelton* and *Frazee*.  Both seem to

suggest that, simply because the Agren property was associated with the

multi-faceted litigation occurring in this Court, there is a basis for them to

claim an enforceable charging lien in its sale proceeds.[9]  The Court

respectfully disagrees.

### 1. The *Skelton* requirements are not satisfied.

In this case, Trustee sought and received approval from the Court to

sell the Agren property, and is currently holding the bulk of those sale

proceeds in trust, pending further order of the Court.  In a general sense,

then, there is a "fund" available for distribution by order of this Court.

---

[9]  Neither of these liens purport to attach only to the Agren property and
its proceeds.  Avery argues that in addition to the Agren property, his lien
attaches to the Teton Pastures property.  Kohler argues his lien attaches to the
Agren and Teton Pasture properties, as well as to two other parcels that were
involved in the litigation.

MEMORANDUM OF DECISION - 19

However, the Court disagrees that these proceeds fall within the "creation of a fund" theory as contemplated by Idaho Code § 3-205 and *Skelton*.  *See In re Secaur*, 83 I.B.C.R. 175, 178 (Bankr. D. Idaho 1983) (questioning whether the division of preexisting community real property in the divorce context fell within the "creation of a fund" theory).

In support of his argument, Avery cites one case,[10] *Dragotoiu v. Dragotoiu*, 991 P.2d 369 (Idaho Ct. App. 1998), which he contends is factually similar to this one, in which an attorney sought to enforce an attorney's lien pursuant to Idaho Code § 3-205.   Avery argues that in that case, the attorney was "entitled to a claim for an attorney lien against all community property owned by his client in his divorce representation[.]" Docket No. 69.

While this is obviously not a divorce case, the Court acknowledges similarities between the facts her and in *Dragotoiu*.[11]  Despite the

---

[10]  Kohler cites no Idaho cases to support his argument.

[11]  The principal similarity between the two cases is that the attorneys had withdrawn from their representation of their clients prior to the time they sought to enforce their attorneys' liens.  Moreover, while the litigation in this Court did

MEMORANDUM OF DECISION - 20

similarities, however, *Dragotiou* offers little help to Avery or Kohler.

Although Avery contends the attorney's lien in *Dragotiou* attached to all community property owned by his client, a careful reading of the Court of Appeals decision reveals otherwise. There was no discussion by the court regarding to which funds, if any, the attorney's lien would attach. Certainly the decision did not hold that any property which Mr. Dragotoiu was awarded pursuant to the state court's division of community property in the divorce decree constituted a "fund" to which his attorney's lien could attach. In short, *Dragotoiu* does not stand for the proposition that the proceeds from the Agren property sale constitute a fund from which Kohler or Avery should expect to look for payment, and the Court makes no such finding. But even if the sale proceeds do constitute a fund within the meaning of *Skelton*, the other requirements laid out by the Idaho Supreme Court are not satisfied.

---

not involve spouses seeking to dissolve a marriage and divide community assets, it could be viewed as an attempt by the Thomason family and TFI to "divorce" themselves financially from the interests held by Greg and Diana Thomason, and to split up the company's valuable assets.

MEMORANDUM OF DECISION - 21

As the dissent in *Skelton* clearly pointed out, a lien acquired pursuant to Idaho Code § 3-205 is "limited to those claims placed in litigation," and does not extend to a client's assets in general. *Skelton*, 625 P.2d at 1081. The Agren property was an existing asset of TFI and the bankruptcy estate of Greg and Diana Thomason. Kohler and Avery did nothing to bring this asset into existence. Moreover, and perhaps more importantly, the attorneys were unsuccessful in their principal argument in the litigation: that their client, TFI, was the sole owner of the property. In short, the attorneys' efforts in the litigation did not, primarily or substantially, secure the sale proceeds for their client.

In addition, neither Kohler nor Avery were employed by TFI on a contingency basis; both charged hourly fees for their services. In this regard, nothing in the testimony or evidence shows that either lawyer agreed to look solely to the property "recovered" for payment as opposed to being paid directly by their clients. Indeed, the evidence is to the contrary. Both Kohler and Avery received an initial cash retainer, and both sought and received various interim cash payments from their clients. *See*

MEMORANDUM OF DECISION - 22

Exs. 502, 709.  As a result, another important *Skelton* element is not satisfied.

In short, because all of the elements required by *Skelton* are not

satisfied, Kohler and Avery are not entitled to attorneys' liens under any

"fund" theory.

### 2.    The *Frazee* requirements are not satisfied.

Because the *Skelton* requirements for establishing a charging lien are

not met, Kohler and Avery must invoke an adjudicative process to "perfect

and reduce [their liens] to a judgment or order of the court."  *Secaur*, 83

I.B.C.R. at 178.   They have not done so.  While they recorded notices of

their claims to attorney's liens in Madison County, where the Agren

property is situated, they did not seek to reduce their claims to a judgment

prior to recording their lien claims.

In *Frazee*, the Idaho Supreme Court identified the problem with this

approach.  It stated:

> The ethical and policy considerations involved in
> a construction of attorney's lien statutes were
> recently before the Washington Supreme Court in
> *Ross v. Scannell*, 97 Wash.2d 598, 647 P.2d 1004
> (1982).  The court there dealt with the practice of

MEMORANDUM OF DECISION - 23

liens of attorneys being attached to property for
unadjudicated and unliquidated claims:

> "Although we recognize the common
> problems faced by attorneys in collecting
> their well deserved fees, the reasons for our
> hesitancy are apparent.  The result of our
> approving the practice would allow
> members of the Bar to cloud title to real
> property with 'claims of attorney lien'
> without resort to any adjudication of such
> claims.  The potential for economic coercion
> by attorneys is obvious . . . .
>
> "In an age when ethics of the bar are
> scrutinized in every quarter, we must hold
> that the result reached by the trial court
> [allowing the unperfected attorney lien] is
> one neither contemplated by the attorney
> lien statute nor in accord with the public
> interest."

*Frazee*, 660 P.2d at 930-31 (quoting *Ross v. Scannell*, 647 P.2d at 1008-09).

The court held that an attorney's attempt to seek a writ of execution,

without earlier obtaining a judicial determination as to the amount actually

owed to him, deprived his client of due process and was improper.  *Id.* at

931.

Kohler's and Avery's tactics are similar to those of the attorney in

MEMORANDUM OF DECISION - 24

*Frazee*.  While their respective lien notices refer to specific dollar amounts,[12]
these amounts have not previously been adjudicated as representing the
true balance due to them for their services, nor have their clients been
afforded any due process with respect to this issue.  *See* Exs. 503, 702, 707.

The Court concludes that the requirements for establishing a *Frazee*
charging lien are not met.  Neither Kohler nor Avery are entitled to a
distribution from the TFI portion of the Agren property proceeds on
account of their alleged attorneys' liens.[13]

## IV. Conclusion

In summary, FFIC is the only party that has submitted sufficient
proof to support its claim to a lien on the proceeds of the Agren property.

---

[12]  Kohler's notice indicates the amount of his lien is $35,000.  Ex. 503.
Avery's initial notice indicates the amount of his lien was $41,619.31.  Ex. 702.
Avery then filed an amended notice which claimed $73,249.05 as of February 26,
2008, with interest accruing at 18% per annum.  Ex. 707.

[13]  The Thomasons vigorously challenge the amounts claimed to be due by
both Kohler and Avery.  Because they are not entitled to a lien, and the issue
before the Court involves only the distribution of funds generated from the sale
of the Agren property, the Court need not, and does not, resolve this dispute.
And this decision does not impact the lawyers' right to seek to collect their debts
through other means, such as by suit against TFI in state court.

MEMORANDUM OF DECISION - 25

Trustee is directed to pay FFIC $22,210.72[14] from the TFI two-thirds portion of the sale proceeds which he is holding in trust.  Trustee shall be ordered to disburse the balance of the sale proceeds to the Clerk of the Madison County District Court, to be distributed by order of that court in connection with the pending action for dissolution of TFI.[15]

Counsel for Trustee shall promptly submit an appropriate form of judgment, consistent with this decision, for entry by the Court.  Counsel for FFIC shall approve the form of the judgment.

_____

[14] FFIC did not submit proof of the current balance due on its judgment, so the Court has calculated that amount from the information contained on the face of the judgment.  The original amount of FFIC's judgment was $16,951.44.  Interest on that amount accrues at the rate of 8.375% per annum, or, according to the Court's calculations, $3.89 per diem.  Therefore, as of, June 24, 2009, the total amount of interest accrued is $5,259.28.

[15] In its prior decision, the Court adjudged that Greg Thomason, and now through him, the bankruptcy estate, owns a minority shareholder interest in TFI.  The Court is advised that Trustee is seeking, through a state court action, a judicial dissolution of that company, and distribution of its assets to shareholders.  Since that action is apparently contested by the Thomasons, in the exercise of this Court's discretion, it is appropriate that any of the Agren property sale proceeds to which TFI may be entitled be paid into the Clerk of the state court.  The interested parties may then request an order for distribution of the funds from the state court.  None of the parties have voiced an objection to that course of action.  Of course, this Court expresses no opinion regarding the issues in that action nor how the TFI funds or assets should be administered.

MEMORANDUM OF DECISION - 26

Dated:  June 24, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 27